UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JANELL SALGADO, Administrator of the Estate of Victor Angel Flores ) ) ) | |
| Plaintiff, ) | Case No. 08 C 2878 |
| v. ) ) | Judge Joan B. Gottschall |
| JOHN DOE, JAMES DOE, MARY DOE, and CITY OF CHICAGO, ) ) ) | |
| Defendants. ) | |

## <u>MEMORANDUM OPINION & ORDER</u>

Defendant City of Chicago (the "City") has moved to dismiss certain allegations[1]

in Counts III and IV of Plaintiff Janell Salgado's First Amended Complaint (the

"Complaint"), which brings claims arising from Victor Angel Flores' death while in the

custody of the Chicago Police Department ("CPD") under 42 U.S.C. § 1983, the Illinois

Survival Act, 755 Ill. Comp. Stat. 5/27-6, and the Illinois Wrongful Death Act, 740 Ill.

Comp. Stat. 180/1, *et seq.*  The City's motion contends that nearly all of Salgado's state

law claims are barred by the Illinois Local Governmental and Governmental Employees'

Tort Immunity Act ("Immunity Act"), 745 Ill. Comp. Stat. 10/2-109, -201; 10/4-103.

The sufficiency of Salgado's pleadings with respect to her § 1983 claims is not at issue

here.

## I. BACKGROUND

The Complaint alleges that Victor Angel Flores was arrested by Chicago Police

officers John and James Doe pursuant to a previously issued warrant on June 28, 2007.

---

[1] The City's motion asks the court to dismiss allegations in ¶¶ 42 (a), (b), (b1), (c1), (d), (d1), (e), (e1), (f), (f1), (h), (i), (j), (k), (l), (m), (n), (o), (p), (q), (r), (s) of Counts III and IV.  Compl.  In her response, Salgado voluntarily dismissed paragraphs 42(o), (p), and (q).  Resp. 10.

Compl. ¶¶ 5, 12.  Flores suffered from bipolar disorder.  Compl. ¶ 4.  Prior to and during Flores' arrest, John and Jane Doe were informed of Flores' medical condition and the fact that Flores was then presently suicidal.  Compl. ¶¶ 7-10.  After Flores surrendered, John and James Doe took him to the CPD station located at 3151 W. Harrison St., Chicago, where Mary Doe assisted in booking Flores.  Compl. ¶ 15.  Flores died while in custody. Compl. ¶ 17.  Counts III and IV of the Complaint allege numerous actions and omissions by the City and John, Jane, and Mary Doe (the "Officers") which precipitated Flores' death.  Compl., Counts III, IV.

## II. ANALYSIS

In relevant part the Immunity Act shields public employees who make public policy from liability in tort for exercising the discretion which enables them to effect their duties.  *See* 745 Ill. Comp. Stat. 10/2-201.  Municipalities are shielded from liability if an employee is immune under the act.  *See id*. at 2-109.  Additionally, Illinois courts have clarified that a finding of immunity under § 2-201 requires a showing that the act or omission at issue involved both a determination of policy *and* an exercise of discretion. *See Van Meter v. Darien Park Dist.*, 799 N.E.2d 273, 281 (Ill. 2003).

The City also asserts that another provision of the immunity act, § 4-103, immunizes it from some of Salgado's allegations.  This section removes liability for failure to provide sufficient equipment, personnel or supervision at a detention or correction facility.  Finally, in reply[2] the City raises two new specific immunities which it contends are applicable here.  The first applies to public employees who fail to diagnose

---

[2] As a formal matter the court deems these arguments waived because they were asserted only in defendant's reply brief.  Nonetheless, the court addressed the merits of the argument *infra*, where it finds them unavailing.

illnesses and the second shields employees of a municipality who make inadequate or inaccurate physical or mental examinations. 745 Ill. Comp. Stat. 10/6-105, -106(a).

      a.  Defendants' Argument Under § 4-103.

Paragraphs 42(a)-(c1) of the Complaint allege that the unnamed officers were responsible for Flores' death either because they took affirmative actions while he was in the officers' custody or because they failed to follow a CPD rule or order that forbade the Officers from the course of action (or inaction) that they took. Compl. ¶¶ 42 (a)-(c1). Paragraph 42(a), for example, alleges that the Officers "failed to remove all items, such as belts, drawstrings, laces, articles of clothing or similar items from decedent's person/possession, when defendants knew these items could be used to harm oneself and when defendants knew that decedent was at substantial risk of harming himself." Compl. ¶ 42(a). Paragraph 42(a1) makes the same allegations, but additionally alleges that such actions were taken in abrogation of a "CPD rule, general order, guideline and/or policy and procedure" requiring the officers to remove the items.

As to Paragraphs 42(a) and (b), the City argues that it is immune from such claims because they relate to "injuries suffered in its lockup," (Mot. 5 ) based on § 4-103 of the Immunity Act which provides that

> Neither a local public entity nor a public employee is liable for failure to provide a jail, detention or correctional facility, or if such facility is provided, for failure to provide sufficient equipment, personnel, supervision or facilities therein.

745 Ill. Comp. Stat. 10/4-103. Though a very broad reading of this section might support the City's argument for dismissal, the court construes the Immunity Act strictly because it was enacted in derogation of the common law, *see Van Meter v. Darien Park Dist.*, 799

N.E.2d 273, 279 (Ill. 2003), and the plain language of the statute belies the City's expansive interpretation. The City implies that it is immune because of the location of the defendant at the time of the act (*i.e.*, in detention), but § 4-103 does not grant such blanket immunity. Instead, the section specifically shields claims based on the sufficiency of detention facilities, their personnel and the supervision provided in them. Paragraph 42(a) makes allegations related to Defendants' failure to remove items of clothing from Flores at the police station; paragraph 42(b) alleges that the Officers:

> Placed decedent in a jail cell/detention area in which there were strings, laces, belts, fixtures, articles of clothing, bed sheets, towels or similar items that defendant knew decedent could use to harm himself and when defendants knew that decedent was at a substantial risk of harming himself.

Compl. ¶ 42(b). While these allegations concede Flores' presence in detention, they make no claim as to the sufficiency of the facility, but rather question the propriety of the decision to place a detainee in Flores' precarious mental condition in such an environment. These allegations are more closely related to charges that Flores should have been sent to a hospital rather than detained, and are not therefore barred by a plain reading of § 4-103.

The City's reliance on *Hayes v. City of Des Plaines*, 182 F.R.D. 546 (N.D. Ill. 1998) for a countervailing interpretation of § 4-103 is misplaced. *Hayes* ruled on a motion to dismiss the City of Des Plaines' affirmative defenses (which relied on various sections of the Immunity Act). Accordingly, the *Hayes* court held that a fact finder could possibly make determinations that would render the City immune and dismissal was therefore inappropriate absent discovery. If *Hayes* counsels any action by this court, then

it commends deferring immunity adjudication under this section until after the record is complete.

Liability under Paragraph 42(d) and (d1) of the Complaint, however is barred by § 4-103 because the paragraph alleges that the supervision Flores received in the location where he was detained was insufficient. *See* Compl. ¶¶ 42(d), (d1) (where Flores was detained "there was no CPD personnel, crisis counsels or other Police Station employees/agents who could respond to decedents['] requests or complaints"). Because § 4-103 protects employees who fail to sufficiently supervise those held in detention, the City is immune from liability under Illinois law. Paragraphs 42(d) and (d1) of the Complaint are, therefore, dismissed.

      b.  Defendants' argument under § 2-109, -201

Defendants seek to dismiss paragraphs 41(b)-(f1), (h)-(i), (j)-(n) and (r)-(s) of the Complaint based on § 10/2-201 of the Tort Immunity Act, which reads:

> Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused.

745 Ill. Comp. Stat. 10/2-201. Illinois courts have construed this provision to apply solely where a public employee performs or fails to perform an act which determines policy *and* exercises discretion. *See Van Meter v. Darien Park Dist.*, 799 N.E.2d 273, 281 (Ill. 2003). In its reply the City contends that the Officers' conduct during the arrest and detention of Flores was an act of policy covered by the Immunity Act because the officers were required to "balance competing interests and . . . make a judgment call as to

what solution will best serve each of those interests." Reply 3 (citing *Van Meter*, 799 N.E.2d at 281-82).

The City's analysis is off the mark because the City has not established that the Officers were authorized to establish policies. The case of *Harinek v. 161 N. Clark St. Ltd. P'ship.*, 692 N.E.2d 1177, 1181 (Ill. 1998) is particularly instructive here. *Harinek* held that the Fire Marshall for the City of Chicago made policy when he decided how to direct a fire drill because he determined "where to assemble the participants and whether to provide warning signs and alternate routing." *Harinek*, 692 N.E.2d at 1182. The court found that these tasks were properly considered attempts to "balance various interests which may compete for the time and resources of the department." *Id*.

The complaint does not allege (and the City has not demonstrated) that the Officers here have policymaking authority of the sort described in *Harinek*. The facts here are more analogous to those in *Torres v. City of Chicago*, 123 F. Supp. 2d 1130, 1134 (N.D. Ill. 2000), where police officers were alleged to have failed to send a wounded detainee to the hospital. The *Torres* court found that those officers "were not making policy determinations at all; if the facts alleged in the complaint are true, they failed to comply with existing policy." *Id*. Similarly, the Officers here are alleged to have executed or violated policies, not to have formulated them; none of the City's assertions sufficiently suggest otherwise. *See also Harrison v. Hardin County Cmty. Unit Sch. Dist. No. 1*, 758 N.E.2d 848 (Ill. 2001) (school *principal* determined policy in denying a student's request to leave school early to avoid driving in the snow). The Officers' actions and omissions, therefore, are not covered by § 2-201. *See Torres*, 123 F. Supp. 2d at 1134 (N.D. Ill. 2000) (rejecting the City's expansive definition of

policymaking, finding that "*Harinek* involved the determination of the Fire Marshall . . . not individual firemen."). Moreover, the Illinois Supreme Court has held that a finding of immunity under § 2-201 is a fact intensive inquiry that must be decided "on a case-by-case basis." *Snyder v. Curran Tp.*, 657 N.E.2d 988, 992-93 (Ill. 1995). A dismissal of allegations in the complaint based on a legal analysis that requires fact determinations is inappropriate under Federal Rule of Civil Procedure 12(b)(6).[3]

As to paragraphs 42(b)-(c1), (f), (f1), and (h)-(i) and (r), (s) of the Complaint, then, the City's motion to dismiss under § 2-109 and -201 of the Immunity Act is denied.

c.  Complaint, Paragraphs 42(j)-(n).

The City contends paragraphs 42(j)-(n) of the complaint should be dismissed under §2-201 because the allegations they contain relate to the City's training of its employees and its implementation of the City's "customs and practices." Mot. 4. In response, Salgado appears to concede that promulgating "customs and practices" falls within the City's policymaking authority, but nonetheless argues that immunity under § 2-201 should not apply because the City's discretion is limited by the Illinois Administrative Code. Moreover, Salgado avers that "certain . . . customs" and practices are "inherently" non-discretionary and therefore an application of the immunity act is inappropriate. Resp. 8 - 9.

In support Salgado cites *Snyder v. Curran Tp.*, 657 N.E.2d 988 (Ill. 1995). In *Snyder* the plaintiff lost control of her vehicle when she encountered a sharp turn on a

---

[3] The City's reliance on *Reed v. City of Chicago*, No. 01 C 7865, 2002 WL 406983 (N.D. Ill 2002) in support of dismissal under § 2-109, 201 is also misplaced. *Reed* involved allegations that the City "breached a duty to carefully supervise, train and hire the defendant police officers." By contrast paragraphs (b)-(c1), (f), (f1) and (h)-(i) of the Complaint allege specific breaches of policy by the Officers and specific omissions and acts; none of these sections allege a breach of a duty to supervise, train or hire the officers. The reasoning in *Reed* is therefore unavailing as to these sections.

rural road; plaintiff sued contending that the township negligently failed "to place a warning sign of the curve in conformity" with the Illinois Vehicle Code. *Id*. at 990. The township sought shelter under § 2-201. Ultimately, the Illinois Supreme Court rejected the immunity argument, reasoning that "where . . . tailored statutory and regulatory guidelines place certain constraints on the decisions of officials, a court should be reluctant to label decisions falling wholly outside the established parameters as 'discretionary.'" *Snyder*, 657 N.E.2d. at 993.

Analogously, Salgado argues that § 2-201 immunity is inapplicable because § 720.3[4] of the Illinois Administrative Code mandates specific actions regarding the treatment of a detainee with a known history of mental illness. 20 Ill. Admin. Code 720.3. Because her pleading alleges that the City adopted a policy or practice in violation of this administrative provision, Salgado contends immunity should not apply. The Court agrees with respect to the allegations in paragraphs 42 (j), (k), and (n).

The Illinois Administrative Code provides:

> a detainee with a known history of mental disorder or mental defect, or a detainee who shows evidence of such condition, shall be detained only temporarily in a municipal jail and transferred as soon as possible. In the event such a detainee is received, the detainee shall be afforded appropriate supervision as determined by the Chief of Police or his or her designee until transferred. The Chief of Police shall immediately notify the appropriate authorities regarding the mental condition of the detainee so that a transfer can be effected.

20 Ill. Admin. Code 720.3. In paragraphs 42 (j) and (k) of her complaint Salgado alleges that the City had customs and practices where detainees with known serious mental

---

[4] Salgado's response brief did not provide proper citations to the two sections of the administrative code she "cited." With some effort the court was able to locate 20 Ill. Admin. Code 720.3, but was unable to locate the citation Salgado referred to in her response as "725(g)."

health problems were taken to a police station rather than a hospital and did not receive or did not timely receive a mental health screening. *See* Compl. ¶¶ 42(j), (k). Moreover, Salgado alleges that the City had a custom and practice not to report detainees' serious health conditions to medical care providers. *See* Compl. ¶ 42(n). All of these allegations can be construed to violate § 720.3.

Rather than take on Salgado's arguments directly, the City cites to two sections of the Immunity Act that it did not assert in its initial memorandum and argues that these provisions eliminate most of the allegations in Counts III and IV.[5] Reply 6. These newly-raised provisions state that "neither a local public entity nor a public employee acting within the scope of his employment is liable for injury caused by the failure to make a physical or mental examination of any person," 745 Ill. Comp. Stat. 10/6-105, nor "for injury resulting from diagnosing or failing to diagnose" a person. 745 Ill. Comp. Stat. 10/6-106(a). Neither of these provisions bear on Salgado's claims. Salgado alleges that the Officers failed to act on knowledge that Flores was suicidal and mentally ill, not that they failed to diagnose or misdiagnosed Flores' condition.

The single case that the City cites in support of the applicability of these provisions to Salgado's complaint is *Paine v. Johnson*, No. 06 C 3173, 2008 WL 4890269 (N.D. Ill. 2008). The allegations in *Paine* stemmed from the treatment of a woman who suffered from bi-polar disorder and was behaving erratically at a Chicago airport. *Id*. at *2-6. She was eventually taken into police custody and released near a Chicago public housing project. *Id*. Shortly after her release Paine was raped, assaulted and thrown out of the window of an apartment building. *Id*. at 6.

---

[5] The City avers that these sections of the Immunity Act bar Salgado's claims in paragraphs 42(c), (c1), (d), (d1), (e), (e1), (f), (f1), (h), (j), (k), (m), and (s).

The *Paine* officers were found immune under § 6-105 and § 6-106(a) of the Immunity Act because the Plaintiff's erratic behavior effectively required the officers to diagnose her condition in order to understand what course of action to take. *See Paine*, 2008 WL 4890269 at *18. Here no diagnosis was required, as Salgado alleges that the Officers knew that Flores was suicidal. The clarity and the imminence of the harm implicated in a suicidal person is much more analogous to the facts in *Torres*, where the court declined to apply the Immunity Act when the decedent in custody suffered from a gunshot wound and the officers did not call an ambulance for an hour. *See Torres*, 123 F. Supp. 2d at 1134 (officers "did not have to decide whether to administer first aid or CPR, they only had to pick up the phone and call an ambulance"). Because the actions and omissions Salgado alleges did not require the Officers to make a diagnosis, but instead act on knowledge they possessed, the court cannot find the City immune based on Sections 6-105 and 6-106(a) of the Immunity Act at this stage.

The custom and practice allegations in Paragraphs 42 (l) and (m)[6] are precluded by § 2-201 of the Immunity Act because Salgado has not provided the court with a statute or administrative provision that conflicts with the practices the City allegedly adopted. As a result the "lack of discretion" rationale relied on in *Synder* does not apply to these portions of the Complaint. *See Snyder*, 657 N.E.2d. at 993 ("where . . . tailored statutory and regulatory guidelines place certain constraints on the decisions of officials, a court should be reluctant to label decisions falling wholly outside the established parameters as 'discretionary"). A "custom or practice" not explicitly prohibited by Illinois law,

---

[6] Paragraph 42(l) of the Complaint alleges that the City "had a custom and practice which did not require the removal" of items of clothing that suicidal detainees might use to harm themselves. Complt. 42(*l*). Paragraph 42(m) alleges that the City had a custom in place where mentally ill detainees were placed in areas that contained materials which detainees could use to harm themselves.

therefore, is properly considered an act of policy and discretion to which the Immunity Act applies.

Salgado's contention that immunity is inappropriate because the City is required "to use ordinary and reasonable care for the preservation of its prisoner's health and life" (Resp. 7) is inapposite because the Immunity Act nullifies general common-law liability for specific acts and actors. Moreover the two cases Salgado refers to in support of liability are off-point; both find a relevant duty of care under the Constitution, which has no bearing on the City's liability in tort. *See Hayes v. City of Des Plaines*, 182 F.R.D. 546, 549 (N.D. Ill. 1998) ("prison official may be held liable under § 1983 for a pre-trial detainee's suicide, if . . . deliberately indifferent to a substantial suicide risk."); *Thomas v. Sheahan*, 499 F. Supp 2d 1062, 1090 (N.D. Ill. 2007) (elaborating duty of care owed to detainee's under the Eight and Fourteenth Amendments).

### III. CONCLUSION

The City's motion to dismiss is granted in part and denied in part. Paragraphs 42(d), (d1), (l), (m), (o), (p), and (q) of Counts III and IV of the Complaint are dismissed.

ENTER:

_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED: September 10, 2009